## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00313-RM-KLM

FOX FACTORY, INC.,

                 Plaintiff,

       v.

SRAM, LLC

                 Defendant.

---

## FOX FACTORY, INC.'S MOTION FOR PRELIMINARY INJUNCTION

---

## REDACTED VERSION

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND.................................................................................1

     A.     FOX's Air Bleed Valve Technology .........................................................1

     B.     FOX's Forks with Air Bleeder Valves........................................................3

     C.     SRAM Knowingly Chose Infringement with its Accused RockShox Forks..........4

     D.     FOX's Patented Bleeder Valves Have Received Industry Praise...........................5

     E.     SRAM's Infringement Has Already and Will Irreparably Harm FOX..................6

III.    ARGUMENT.........................................................................................................7

     A.     FOX's Patent Infringement Claims are Likely to Succeed...............................7

            1.     The terms of claim 1 of the '331 patent should be given their plain and ordinary meaning ...............................................................7

            2.     FOX is likely to prove that SRAM literally infringes claim 1 of the '331 patent ....................................................................8

            3.     FOX is likely to prove that SRAM directly and/or indirectly infringes claim 1 of the '331 patent ...........................................9

     B.     FOX Will Suffer Irreparable Harm if SRAM's Infringement Is Not Preliminarily Enjoined...............................................................................10

            1.     SRAM's infringement has and will continue to harm FOX's reputation as an innovator and ability to market itself as the exclusive seller of the air bleed valve technology ......................................11

            ▮     ███████████████████████████████ ..........................................11

            3.     SRAM's infringement has and will continue to result in losses to FOX's business opportunities and irreparably harm its market position for 2023, 2024, and beyond ......................................12

            4.     There is causal nexus between SRAM's infringement and the harm to FOX in the form of lost sales and market position...............................14

     C.     The Balance of Equities Tips in Favor of FOX .................................................16

D.      The Public Interest Favors Entry of a Preliminary Injunction ..............................18

IV.     RELIEF REQUESTED ......................................................................................................18

## I.      INTRODUCTION

Plaintiff FOX respectfully moves for a preliminary injunction to prevent Defendant SRAM, FOX's chief competitor for sales of mountain bike forks, from continuing to willfully infringe FOX's patented air bleed valve technology. Not only does FOX's motion demonstrate a reasonable likelihood of success on the merits and irreparable harm, it presents compelling admissions that SRAM made a knowing, calculated decision to infringe.

By 2020, FOX's mountain bike forks with its patented bleeder valves were gaining rapid traction in an exploding mountain bike market. In a recorded interview in 2020, SRAM touted its latest mountain bike fork—which lacked FOX's patented bleeder valves—as including all the features a rider could want. In response, **the interviewer asked SRAM, "this might be another obvious question that you get a lot, but why no bleeders on the fork?"** SRAM struggled to answer, but explained that its competitor had intellectual property on the bleeder valves and SRAM had to "respect that." But the market temptations were hard to resist and, in early 2022, SRAM launched new forks with infringing bleeder valves, which SRAM touted as "New Technology."

FOX and SRAM compete intensely in what is essentially a two-supplier market, and the busy 2023 sales season is now heating up. FOX will be irreparably harmed if SRAM is not precluded from competing for sales against SRAM forks that include FOX's patented technology.

## II.     FACTUAL BACKGROUND

### A.      FOX's Air Bleed Valve Technology

Generally, bicycles intended to be ridden in off-road environments (referred to as "mountain" bikes) include a front suspension system, called a "fork" or "suspension fork," which provides shock absorption and suspension functions for the front wheel of the bicycle. Slocum

Decl., ¶¶17, 18. The suspension fork is generally characterized by two fork legs, one on each side of the front wheel and held in place by an axle, and with each fork leg including an upper fork tube and a lower fork tube engaged telescopically. *See* Dkt. 29-1, Ex. A (the '331 patent), Fig. 1 (reproduced to the right); Slocum Decl., ¶¶18, 19. Typically, one fork leg of the suspension fork includes a spring mechanism (e.g., gas spring, mechanical coil, etc.), and the other fork leg includes a damping mechanism (e.g., a piston assembly). Slocum Decl., ¶19. During operation, the damping mechanism is subjected to compression and rebound loads. *Id*. The compression is induced by variations in the terrain (e.g., bumps and holes), and the rebound is induced by the spring mechanism (in the other fork leg) which stores energy during compression and releases that energy during expansion (e.g., when the variation in the terrain passes and the path becomes flat). *Id*.



FIG. 1

When a mountain bike goes from a relatively low elevation to a high elevation, e.g., on ski lifts, the increase in elevation causes ambient pressure outside the fork to decrease, but pressure inside the fork stays the same because it is a sealed volume. *Id.* at ¶20. This relative increase in air pressure in the lower fork tubes (relative to the ambient pressure) increases axial friction in the fork and degrades the performance of the fork suspension. Slocum Decl., ¶20; Allinger Decl., ¶8.

FOX's '331 patent discloses and claims, among other features, air bleed valve assemblies disposed on the lower fork tubes, which improve fork performance by allowing equalization of air pressure in the lower fork tubes to ambient air pressure, and thereby lowering friction in the fork tubes. '331 patent, 3:43-4:1; Slocum Decl., ¶20; Allinger Decl., ¶8. An additional benefit of FOX's patent is that it allows balancing of the spring force in the fork. Slocum Decl., ¶20. Typically, the fork's spring (in one leg of the fork) is at a zero-force balance when the pressure inside the lower

fork tubes is equal to the ambient pressure outside. *Id.* But as elevation increases, the resulting pressure difference causes a positive force balance (preload) on the fork's spring, which degrades comfort and the ability of the wheel to maintain contact with the road or trail surface. *Id.* FOX's patented air bleed valves allow balancing of the spring force, and thereby improve the rider experience, by equalizing pressure inside the lower fork legs to the ambient pressure outside. *Id.*

### B.    FOX's Forks with Air Bleeder Valves

FOX first commercially launched lower-leg air bleed valves in the year 2013, when FOX added them to the lower legs of FOX 40 forks, which were intended for heavy duty "downhill" style mountain bikes that were designed to be ridden downhill over irregular, rigorous, and demanding terrain. Allinger Decl., ¶¶9, 10. This was not a trivial feature to design and incorporate into the lower legs of the forks, in part because the lower legs include oil baths, so it was important to design the forks and the valves so that oil did not leak through the valves during shipment or use. *Id.* at ¶9. These FOX 40 downhill forks with bleeder valves were commercially successful and received praise in mountain bike publications and market. *Id.* at ¶10.

Between 2013 and 2020, mountain bike technology significantly improved.  "All mountain" and "enduro" bikes, which have broader uses than downhill bikes, became well-suited to the rigors of mountain bike parks and other demanding conditions that had previously required downhill-style bikes. *Id.* at ¶11. FOX saw the opportunity to expand its patented bleeder valves beyond the downhill market and into the much bigger "all mountain" and "enduro" bike markets. *Id.* In 2020, FOX added its patented bleeder valves to its FOX 36 "all mountain" forks and the FOX 38 "enduro" forks. *Id.* at ¶12. These new FOX forks quickly gained market traction and have been a huge commercial success since 2020, far outselling FOX's prior fork models. *Id.*

### C.       SRAM Knowingly Chose Infringement with its Accused RockShox Forks

FOX and SRAM directly and intensely compete to sell their forks to approximately ███
███ mountain bike OEMs/brands, who decide whose forks they will include or "spec" on each of
the OEM/brand's mountain bike models. Allinger Decl., ¶¶3-5, 18. Such competition is referred
to as competing for OEM "specs" or "spec positions" in the mountain bike industry. *Id.* at ¶5.
There can be no reasonable doubt that circa 2020 and 2021, SRAM was well-aware of FOX's
exploding sales of forks with its patented bleeder valves. *Id.* at ¶15.

It is also clear from a recorded interview dated July 2020 that SRAM knew that riders and
the market wanted bleeder valves on mountain bike forks, but SRAM was not offering them
because of FOX's patent. More specifically, a SRAM/RockShox fork manager claimed during that
2020 interview that SRAM and its sponsored athletes were all "super happy with where we ended
up with the stock configuration" for SRAM's latest fork, the ZEB.[1] **The interviewer followed up
by asking, "this might be another obvious question that you get a lot, but why no bleeders on
the fork?"** *Id*. SRAM's product manager stammered in response, "Mmm, that's an interesting
one. Umm [long pause] . . . navigating IP is an interesting one. . . . [T]here are other technologies
that are patented in the suspension world, and we have to respect that kind of stuff." *Id*. This
interview underscores that riders and OEM/brand sellers have come to expect bleeder valves on
"all mountain" and "enduro" bike forks. *See also* Allinger Decl., ¶17. FOX's Executive Vice
President of the Cycling Business Unit has attested that SRAM, without its infringing bleeder
valves, would not be able to secure many "spec" wins for middle- to high-end bicycle forks. *Id*.

---

[1] *See* podcast of interview at https://www.vitalmtb.com/product/guide/Forks,33/RockShox/ZEB-Ultimate,30683, at approximately time 29:25-31:00 (last visited January 5, 2023).

**D.    FOX's Patented Bleeder Valves Have Received Industry Praise**

Since the time FOX launched its FOX 36 and 38 forks with bleeder valves in 2020, it has received praise from leading mountain biking publications. For example, in an article dated September 2022, VitalMTB referred to FOX's patented bleeder valves as an "unique," "well-received" feature that added "advantage":

> **<u>Unique</u> Features**
>
> FOX incorporated air bleed ports into the 36 with its last major revamp and **the feature has been well-received**. When RockShox launched its new line, they too, included bleed ports. Right now, the attorneys are sorting out if the update is legal.
>
> **The <u>advantage</u>, as it is stated, is that releasing or equalizing the air from the fork lowers to the outside allows for a more responsive ride**.

Ex. 1, p. 8[2] (emphases added).

Similarly, BikeRumor! magazine called FOX's patented bleeder valve a "**popular**" feature "for **keeping the forks working their best** as temperature and elevation changes throughout the ride." Ex. 2, p. 2 (emphases added). Mountain Bike Action referred to FOX's patented bleeder valves as a **"clever design"** and recognized that the bleeder valves were noticeably missing from SRAM's competing RockShox ZEB fork:

> "RockShox and Fox have nearly identical goals for their latest forks. . . . . When comparing features, we cannot overlook the external features on the Fox. The 38 uses air bleeders designed to help release pressure built up in the lowers when air is accumulated during riding. This can be helpful when you are rapidly changing elevation. **It's a <u>clever</u> design**; however, **these bleeders are not a feature you will find on the RockShox ZEB [fork]**."

Ex. 3, pp. 3-4 (emphases added). And The Loam Wolf called FOX's bleeder valves a "**cool**" feature, which helps to "remove air from inside the fork legs, which can degrade performance." Ex. 4, p. 3 (emphasis added).

---

[2] Unless stated otherwise, all exhibits are attached to the Declaration of Robert McCauley.

### E.   SRAM's Infringement Has Already and Will Irreparably Harm FOX



Allinger Decl. ¶¶19-20.

*Id*. at ¶¶20, 23.

*Id*. at ¶¶21-22.

The Accused Forks were commercially available in the U.S. in April/May 2022. FOX promptly assessed infringement and filed suit in July 2022. *Id*. at ¶¶25-27. Following filing of the suit, there were almost monthly settlement negotiations between the parties. *Id*. at ¶27. Because the negotiations failed to resolve the dispute, FOX had no choice but to file a motion for preliminary injunction to prevent further irreparable harm during the busy season in spring and summer 2023. FOX filed its PI motion on January 13, 2023, while this case was venued in California (Dkt. 40), and promptly refiled its motion after this action was transferred to this Court.

FOX should be able to enjoy market exclusivity with its patented bleeder valves. Allinger Decl., ¶22. FOX's business and reputation for innovation and leadership in the suspension market

---

[3]The "Accused Forks" are the base, Select, Select+, Ultimate, and Ultimate Flight Attendant models of the Lyrik, Pike, and ZEB series of SRAM's RockShox forks.

will be irreversibly harmed if SRAM is not enjoined from selling its infringing forks. *Id*. Specifically, allowing SRAM to continue to infringe will undermine the perceived value of FOX's air bleed valve technology and harm FOX's ability to market itself to OEM/brand customers as the exclusive seller of mountain bike forks with air bleed valves. *Id*.

## III.    ARGUMENT

A preliminary injunction should be granted where "the patent owner has shown: (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm to the patent owner in the absence of the injunction; (3) that this harm would exceed harm to the alleged infringer when subject to the injunction; and (4) that granting the injunction is in the public interest." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005). Because FOX has established each of these elements, as discussed in detail below, the Court should enter the requested preliminary injunction.

### A.    FOX's Patent Infringement Claims are Likely to Succeed

"To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017) (citing *Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012)). "To prove infringement, a patentee must show that an accused product or method meets every claim limitation either literally or under the doctrine of equivalents." *Pfizer*, 429 F.3d at 1376.

### 1.    The terms of claim 1 of the '331 patent should be given their plain and ordinary meaning

Claim 1 of the '331 patent does not require construction because it uses clear, nontechnical

terms that should be accorded their plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention in the context of the specification. *See Summit 6, LLC v. Samsung Elecs. Co*., 802 F.3d 1283, 1291 (Fed. Cir. 2015); *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc*., 694 F.3d 1312, 1326 (Fed. Cir. 2012).

### 2.     FOX is likely to prove that SRAM literally infringes claim 1 of the '331 patent

The SRAM Accused Forks literally infringe claim 1 of the '331 patent. Slocum Decl., ¶22. Each of the Accused Forks includes a "a lower fork and air bleed assembly." Slocum Decl., Ex. B at 1, Ex. C at 1. Each of the Accused Forks has "telescopically engaged" upper and lower forks, wherein the lower fork comprises a "lower leg seal" on an outermost edge of a lower fork tube and an "oil bath" within the lower fork tube, and further wherein the "lower leg seal" seals a gap between the upper and lower forks and prevents leakage of oil from the lower fork tube. *Id.*, Ex. B at 2-4, Ex. C at 2-4. The lower fork tube further comprises "an upper bushing" located adjacent to the "lower leg seal" and an "air bleed assembly" for equalizing pressure within the lower fork tube with the ambient pressure. *Id.*, Ex. B at 5-6, Ex. C at 5-6.

The "air bleed assembly" of each of the Accused Forks comprises a "fluid passage" disposed on the lower fork tube, and a "manually operable valve" coupled to the "fluid passage" and disposed between the "lower leg seal" and a lower end of the fork that is attached to the bicycle. *Id.*, Ex. B at 7-9, 12, Ex. C at 7-9, 12. The "manually operable valve" is configured to close the "fluid passage" in a first position and allow a fluid (e.g., air) to flow through the "fluid passage" in a second position. *Id.*, Ex. B at 10-11, Ex. C at 10-11. Significantly, the "fluid passage" and the "manually operable valve" are located at a distance from the "oil bath," such that when the "manually operable valve" is in the second position, most of the oil remains within the lower fork

tube but air within the lower fork tube is released through the "fluid passage" to equalize air pressure within the lower fork with the ambient air pressure. *Id.*, Ex. B at 13-15, Ex. C at 13-14.

### 3. FOX is likely to prove that SRAM directly and/or indirectly infringes claim 1 of the '331 patent

There is a high likelihood of establishing that SRAM directly infringes claim 1 of the '331 Patent under 35 U.S.C. § 271(a) by selling, offering for sale, and/or importing into the U.S. the Accused Forks. SRAM's website identifies hundreds of authorized dealers in the U.S. as well as large bicycle retailers, such as Backcountry, Worldwide Cyclery, JensonUSA, etc., who resell at least the Ultimate and Select models of the Accused Forks. *See* https://www.sram.com/en/dealer-locator (last visited on January 13, 2023). It is thus highly likely that SRAM offers to sell and/or sells at least the Ultimate and Select models of the Accused Fork to its authorized dealers in the U.S. as aftermarket products, and thus directly infringes the '331 patent.

Moreover, SRAM indirectly infringes under 35 U.S.C. § 271(b) by inducing its authorized dealers and/or OEMs (i.e., brand companies) to sell or offer to sell the Accused Forks or bicycles having the Accused Forks in the U.S. *See* Dkt. 31-2, Ex. 3, PDF pp. 28-29 [23:23-24:24] (SRAM's 30(b)(6) witness agreeing that SRAM sells the Accused Forks to bicycle OEMs who assemble the Accused Forks on brand-named bicycles, e.g., Specialized, Trek, etc., which are then sold by the authorized retailers in the U.S.); *see also* Allinger Decl., ¶6. Induced infringement requires a showing that SRAM's "actions induced infringing acts" and that SRAM "knew or should have known that its actions would induce actual infringement." *Mentor H/S, Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001). Here, SRAM has known of its infringement of claim 1 of the '331 patent by each of the Accused Forks since at least the filing date (November 30, 2022) of FOX's First Amended Complaint. Dkt. 29. And SRAM has continued to take affirmative

steps that have encouraged, aided, and abetted direct infringement by its authorized dealers, distributors, retailers, resellers, OEM customers, and end-users in the United States. These acts include, but are not limited to, SRAM's manufacture and supply of the Accused Forks (either directly or through direction of its wholly owned subsidiary(ies)), promotion on its website, providing user manuals/guides and instructions instructing its customers/end users how to use the Accused Forks. *See*, *e.g.*, Ex. 8 (Lyrik, ZEB, and Pike Service Manual); Exs. 5, 6, and 7 (SRAM's website promoting the accused Lyrik, ZEB, and Pike forks). Thus, SRAM has had "knowledge of the patent[] and of its customers' infringing activity and [] it intended to induce their infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 408 (Fed. Cir. 2018).

### B.   FOX Will Suffer Irreparable Harm if SRAM's Infringement Is Not Preliminarily Enjoined

"A party seeking a preliminary injunction must establish that it is likely to suffer irreparable harm if the preliminary injunction is not granted and there is a causal nexus between the alleged infringement and the alleged harm." *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017). "[B]ecause the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988). "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). FOX has suffered and will continue to suffer these irreparable harms, as explained in detail below and in the Declaration of Wesley Allinger (¶¶18-23).

### 1. SRAM's infringement has and will continue to harm FOX's reputation as an innovator and ability to market itself as the exclusive seller of the air bleed valve technology

For over thirty years, FOX has earned a reputation for innovative and high-quality suspension products, including mountain bike forks. Allinger Decl., ¶2. Allowing SRAM to continue to infringe would irreparably harm FOX's established reputation as an innovator. *Id.* at ¶¶22; *see Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344-45 (Fed. Cir. 2013) (finding district court clearly erred in overlooking the irreparable harm caused by the patentee's loss of reputation as an innovator). In addition, "[e]xclusivity is closely related to the fundamental nature of patents as property rights. It is an intangible asset that is part of a company's reputation, and here, [FOX's] exclusive right to make, use, and sell the patented inventions is under attack by [SRAM's] infringement." *Douglas Dynamics*, 717 F.3d at 1345. Specifically, SRAM's continued infringement will undermine the perceived value of FOX's air bleed valve technology, the strength of FOX's intellectual property in the eyes of its OEMs/brand customers, and harm FOX's ability to market itself as the exclusive seller of mountain bike forks with air bleed valves. Allinger Decl., ¶¶22-23. Money damages will not be able to compensate FOX for the harm stemming from loss of its patent value and the loss of exclusivity. *See, e.g.*, *Anderson v. TOL, Inc.*, 927 F. Supp. 2d 475, 487-88 (M.D. Tenn. 2013) (finding irreparable harm where continuing infringement "threatened to degrade the value of [the] Patents to such a degree that other companies might not do business with [patentee] at all"); *see also* Allinger Decl., ¶23.

Allinger Decl., ¶18.



*Id.* at ¶¶20-21.

*Id.* at ¶¶22. *Celsis*, 664 F.3d at 930; *see also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382-83 (Fed. Cir. 2006).

### 3. SRAM's infringement has and will continue to result in losses to FOX's business opportunities and irreparably harm its market position for 2023, 2024, and beyond

FOX and SRAM are direct competitors in the field of mountain bike suspension forks. Allinger Decl., ¶¶3-5. In fact, most medium- to high-end mountain bikes are sold with FOX and/or SRAM suspension forks. *Id.* at ¶3. That is, FOX and SRAM are the two main suppliers of medium- to high-end mountain bike forks, both internationally and in the U.S., and they compete head-to-head for sales to OEMs/brand companies (e.g., Pivot, Specialized, Santa Cruz, Trek, etc.). *Id.* at ¶¶3, 4. There is intense competition between FOX and SRAM—

—for these "spec" positions with OEMs/brand companies. *Id.* at ¶5.

*Id.* at ¶21.

*Id.* at ¶22; *See Port-a-Pour, Inc. v. Peak Innovations, Inc.*, 49 F. Supp. 3d 841, 873 (D. Colo. 2014) ("[T]he Federal Circuit has recognized that 'the existence of a two-player market may well serve as a substantial ground for granting an injunction—e.g., because

it creates an inference that an infringing sale amounts to a lost sale for the patentee.") (quoting *Won–Door Corp. v. Cornell Iron Works, Inc.*, 981 F. Supp. 2d 1070 (D. Utah 2013)); *see also Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 988 (C.D. Cal. 2017), *aff'd in part and vacated in part, on other grounds* 894 F.3d 1339 (Fed. Cir. 2018) (evidence of two-supplier market and direct competition was sufficient to establish irreparable harm from lost business opportunities)).

Indeed, when an accused infringer is in direct competition with a patentee in a largely two-supplier marker, as is the case here between FOX and SRAM, "[m]oney damages are generally insufficient to compensate the patent holder because the infringement causes a direct, measurable loss of market share, customers, and access to potential customers, and causes irreversible price erosion." *Hydrodynamic Indus. Co. v. Green Max Distributors, Inc.*, No. 2:12-CV-05058, 2014 WL 2740368, at *3 (C.D. Cal. June 16, 2014) (citing *Robert Bosch LLC v. Pylon Mfg. Corp.,* 659 F.3d 1142, 1153 (Fed. Cir. 2011)); *see also Douglas Dynamics*, 717 F.3d at 1345 ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."); *EcoNova Inc. v. DPS Utah*, No. 1:12-CV-174, 2012 WL 5944257, at *15 (D. Utah Nov. 28, 2012) (similar).

Additionally, as the Federal Circuit has recognized, winning "spec" positions or "design wins" with OEMs/brand customers means that the OEMs are effectively locked into the winner for the duration of a design cycle, which "temporarily immunizes the winner from competition," and thus exacerbates the irreversible harm to the patentee. *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1336 (Fed. Cir. 2013). Moreover, "the winners enjoy an 'incumbency effect' making

them more likely to win subsequent design competitions because the OEM's familiarity with the winning supplier creates goodwill." *Id.* Therefore, if SRAM is permitted to compete against FOX for "spec" positions in spring and summer of 2023, then any "spec" wins by SRAM would immunize them from further competition for the design cycle, and would give SRAM an incumbency advantage and increased market share in future years. Allinger Decl., ¶23. This will cause further irreparable harm to FOX, not just in 2023, but far beyond.

### 4. There is causal nexus between SRAM's infringement and the harm to FOX in the form of lost sales and market position

As the Federal Circuit explained in a series of cases between Apple and Samsung, the irreparable injury inquiry requires some causal nexus between the infringing features of the accused products and the alleged harm to patentee. *See Apple I*, 678 F.3d at 1324 (requiring "some causal nexus" between the infringing features and the lost sales); *Apple, Inc. v. Samsung Electronics Co.*, 695 F.3d 1370, 1374-75 (Fed. Cir. 2012) (*Apple II*) ("a sufficiently strong causal nexus [that] relates the alleged harm to the alleged infringement" is "part of the irreparable harm calculus"); *Apple, Inc. v. Samsung Electronics Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013) (*Apple III*) (requiring "some causal nexus" between infringing conduct and alleged harm); *Apple, Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015) (*Apple IV*) (requiring "a causal nexus linking the harm and the infringing acts" to ensure that "an injunction is not entered on account of 'irreparable harm caused by otherwise lawful competition'" (quoting *Apple III*, 735 F.3d at 1361)).

As the Federal Circuit further explained in *Genband US LLC v. Metaswitch Networks Corp.*, this causal-nexus requirement of the irreparable harm calculus is met when the infringed feature is "*a* driver" of demand for the accused products. 861 F.3d 1378, 1382 (Fed. Cir. 2017) (emphasis in original). More specifically, where, as here, the accused products include multiple

features and have multiple different customers, the patented feature need only be "'*a* driver' as opposed to '*the* driver'" of consumer demand for the accused products. *Id.* (emphases in original); *see also Shure, Inc. v. ClearOne, Inc.*, No. 1:17-cv-3078, 2019 WL 3555098, at *22 (N.D. Ill. August 5, 2019) (patentee "does not need to show that the patented features of its product are the only or even the main reason for consumer demand for it.") (citing *Genband*, 861 F.3d at 1382-84). Indeed, in both *Apple I* and *Apple III*, the Federal Circuit articulated the governing standard as "some causal nexus," meaning that the patentee only has to show "some connection" between the patented feature and demand for the infringing products. *Apple I*, 678 F.3d at 1324, 1327; *Apple III*, 735 F.3d at 1364. Moreover, in *Apple III*, the Federal Circuit specifically rejected the stringent interpretation previously adopted by many lower courts that to meet the causal-nexus requirement, the patentee had to "show that a patented feature is the one and only reason for consumer demand" and explained that such a requirement was too rigid and inflexible given the complexity of consumer preferences. *Apple III*, 735 F.3d at 1364 (patentee need not show that the patented features is the "sole reason" for consumer demand). And in *Apple IV*, the Court further stated that the causal-nexus requirement "just means that there must be proof that the infringement causes the [alleged] harm." 809 F.3d at 639. The Court reiterated the error of a "sole cause" standard when multiple features are present in an accused product, *id.* at 641, and explained that the district court erred by requiring patentee "to prove that the infringing features were the exclusive or predominant reason why consumers bought [the accused] products to find irreparable harm," *id.* at 642.

Here, there is a causal nexus between the irreparable harm to FOX in the form of lost "spec" positions with OEMs/brand companies and the patented feature—i.e., the air bleed assemblies—in the Accused Forks. As FOX's Executive Vice President of the Cycling Business Unit explained,

"bleeder valves have become a highly desired feature in middle- to high-end mountain bike forks" and "without its infringing forks with bleeder valves, SRAM would not be able to secure many 'spec' wins for middle- to high-end bicycle forks." Allinger Decl., ¶17; *see also id.* at ¶13 (explaining consumer desire for air bleed valves on middle- and high-end mountain bike forks). Significantly, SRAM itself promotes its recent addition of air bleed valves (referred to as "Pressure Release Valves") as a "New Technology" in its Accused Forks and touts their technical benefits:

> "New Pressure Relief Valves eliminate unwanted air pressure build up in the fork lower leg caused by variations in altitude or temperature. With the press of a button, Pressure Relief Valves restore premium fork feel throughout the travel."

Ex. 5, pp. 3-4, Ex. 6, pp. 3-4, Ex. 7, pp. 3-4 (SRAM's marketing of Pressure Release Valves as "New Technologies" added to the Accused Forks). This demonstrates that SRAM believes the air bleed valves are a leading selling feature that, along with other features, would drive customers' decisions to purchase SRAM's forks. Relatedly, the patented air bleed valves in FOX's forks have received praise from the mountain biking industry and relevant publications, thus demonstrating that the air bleed valves make FOX's mountain bike forks—and in all likelihood SRAM's forks as well—more desirable to consumers. *See supra* Section II.D. Thus, the causal-nexus requirement of the irreparable harm inquiry is met. *Apple IV*, 809 F.3d at 644 (explaining that "it is enough" to establish causal nexus by showing that the patented "features were related to infringement and were important to customers"); *Genband*, 861 F.3d at 1382 (causal nexus is shown when the infringing features is "*a* driver" of demand for the accused products) (emphasis in original).

### C.   The Balance of Equities Tips in Favor of FOX

Under the balance-of-equities factor, "[t]he district court must weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the

injunction is granted." *Metalcraft*, 848 F.3d at 1369 (citing *Hybritech*, 849 F.2d at 1457). It cannot be disputed that FOX has invested considerably in many years of research and development culminating in FOX's mountain bike forks having air bleed valves. Allinger Decl., ¶¶2, 9-12. FOX has also invested in protecting its invention through a series of patents beginning in 2012 and culminating in the '331 patent. Dkt. 29-1, Ex. A, p. 19 (showing provisional application priority date of May 9, 2012 and parent application filing date of May 9, 2013). Absent preliminary relief, SRAM will plainly undercut FOX's intellectual property by marketing and selling the Accused Forks in 2023 and beyond. Allinger Decl., ¶¶21-23. FOX would be forced "to compete against its own patented invention, with the resultant harms described above, plac[ing] a substantial hardship on [FOX]." *Robert Bosch*, 659 F.3d at 1156; *Celsis*, 664 F.3d at 931 (finding that the balancing of harm favors patent owner Celsis because "[a]bsent a preliminary injunction, Celsis would lose the value of its patent as well as suffer the irreparable harms opined on by its expert.").

Due to COVID-caused supply chain problems, SRAM's fork "spec" wins in 2022 were limited, but SRAM is aggressively competing for infringing sales in 2023. Allinger Decl., ¶¶18-19. And although FOX would be within its legal rights to request an injunction for all offers to sell or sales of the Accused Forks, FOX does not ask to enjoin or void any written purchase orders for Accused Forks received by SRAM on or before January 15, 2023. FOX is limiting its requested injunction in this way to avoid detriment to FOX and SRAM's mutual fork customers. Thus, the grant of preliminary relief would "maintain the status quo" and not disrupt SRAM's prior business activities. Allinger Decl., ¶23; *Lonza Walkersville, Inc. v. Adva Biotechnology Ltd*., 581 F. Supp. 3d 736, 752 (D. Md. 2022) (finding that because defendant Adva has "generated no U.S. sales and has no current business activities that would be disrupted," the injunction would "maintain[] the

status quo," which supports grant of preliminary relief). Furthermore, any financial harm to SRAM would be the result of its own calculated risk in selling products with knowledge of FOX's patent, and therefore, SRAM should not be heard to complain about hardships resulting from the injunction. Allinger Decl., ¶¶15-17 (explaining SRAM's willful infringement); *Sanofi-Synthelabo*, 470 F.3d at 1383 (finding no clear error in the district court's finding that the alleged harm to defendant were preventable and "were the result of its own calculated risk"). For these reasons, the harms to FOX outweigh those to SRAM.

### D.    The Public Interest Favors Entry of a Preliminary Injunction

The public interest favors protecting FOX's patent rights and entry of a preliminary injunction. *See Sanofi-Synthelabo*, 470 F.3d at 1383 ("We have long acknowledged the importance of the patent system in encouraging innovation."). Investment in research and development "must be encouraged and protected by the exclusionary rights conveyed in valid patents," and this "incentive would be adversely affected by taking market benefits away from the patentee and giving them to the accused infringer." *Celsis*, 664 F.3d at 931-32. Furthermore, an injunction would not harm the public because FOX and SRAM both sell the mountain bike forks at issue, and are in direct competition. Allinger Decl., ¶¶3, 5. As such, the public can obtain FOX's forks with air bleed valves. Therefore, the grant of preliminary injunctive relief would serve rather than undermine relevant public interests. *Celsis*, 664 F.3d at 931-32 (finding that public interest does not disfavor enjoining defendant LTC because "the public can obtain the products from Celsis").

## IV.    RELIEF REQUESTED

For the foregoing reasons, FOX respectfully requests that the Court preliminarily enjoin SRAM and all persons in active concert or participation with them from the following pending

trial on the merits, except for any written purchase orders from customers received by SRAM by January 15, 2023: (a) making, using, selling, or offering for sale within the United States, or importing into the Unites States, the Accused Forks, and products not more than colorably different from them; and (b) inducing other persons to make, use, sell, or offer for sale within the United States, or import into the United States, the Accused Forks and products not more than colorably different from them. FOX also requests that SRAM be ordered to provide written notice of the Court's preliminary injunction to: its officers, directors, agents, servants, representatives, attorneys, employees, subsidiaries and affiliates, and those persons in active concert or participation with them, including any and all manufacturers, distributors, retailers, and service providers who have been involved in the making, using, selling, offering for sale or importing in the United States of any of the Accused Forks; and to all other persons or entities involved in any way with the making, using, selling, offering for sale, or importing of any the Accused Forks. FOX requests that said written notice state prominently and in bold type on the first page of the notice that the Accused Forks may not be sold, offered for sale, or used in the United States, nor may said products be imported into the United States. FOX also requests that SRAM be ordered to take whatever means are necessary or appropriate to ensure that the Court's preliminary injunction is properly complied with.

Dated:  February 17, 2023                          Respectfully submitted,


                                                    _____*/s/ Robert F. McCauley*_____
                                                   Robert F. McCauley
                                                   FINNEGAN, HENDERSON, FARABOW,
                                                    GARRETT & DUNNER, LLP
                                                   *Attorneys for Plaintiff FOX FACTORY, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of February, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- Richard B. Walsh, Jr.:(rwalsh@lewisrice.com)
- Michael J. Hickey (mhickey@lewisrice.com)
- Sarah A. Milunski (smilunski@lewisrice.com)
- Timothy R. Beyer (tim.beyer@bryancave.com)

I hereby certify that I have mailed or served the foregoing document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

- Edward T. Pivin (epivin@lewisrice.com) - via electronic mail
- Steven M. Hanle (hanle@stradlinglaw.com) - via electronic mail

*/s/ Robert F. McCauley*